UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **TONY JACKSON**,<br><br>         Plaintiff,<br><br>v.<br><br>**J. SANTANA, Warden**,<br><br>         Defendants. | Case No.: 18-CV-0212-JLS-WVG<br><br>**REPORT AND RECOMMENDATION ON PETITION FOR WRIT OF HABEAS CORPUS** |

## I. <u>INTRODUCTION</u>

On January 29, 2018, Tony Jackson ("Petitioner") filed a Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254 challenging his criminal conviction of robbery (Pen. Code § 211), attempted robbery (Pen. Code §§ 211/664), two counts of assault (Pen. Code § 240), and failure to appear while on bail (Pen. Code § 1320.5). (Lod. 10, ECF No. 7-23 at 55.) Petitioner asserts two grounds for relief, alleging: (1) that the prosecution failed to establish his identity as to the strike priors; and (2) ineffective assistance of both trial and appellate counsel. (Pet., ECF No. 1.) On April 2, 2018, Respondent filed a Response, which asserts that Petitioner's claims are procedurally barred and meritless. (Resp., ECF No. 6.) Respondent contemporaneously lodged relevant state court records with its Response. On May 17, 2018, Petitioner filed a Traverse. (ECF No. 8.)

The Court has considered the Petition, the Response, Petitioner's Traverse and all

supporting documents submitted by the parties. Based upon the documents and evidence presented in this case, and for the reasons set forth below, the Court **RECOMMENDS** the Petition be **DENIED**.

## II. FACTUAL BACKGROUND

This court gives deference to state court findings of fact and presumes them to be correct unless Petitioner rebuts the presumption of correctness by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *see also Parke v. Raley*, 506 U.S. 20, 36-36 (1992) (holding that findings of fact are entitled to statutory presumption of correctness). The following facts are taken from the California Court of Appeal's opinion on Petitioner's direct appeal, affirming the judgment of the trial court.

> A. *Robbery of Cash Plus Store (2013 Incident)*
> Gino Viskovic was the owner of a check-cashing business called Cash Plus located in a shopping complex in San Diego. On January 18, 2013, about 7:00 p.m., he began closing down for the evening when he noticed a man in the lobby. Viskovic asked the man if he needed anything, and the man immediately left without answering. On January 22, 2013, about 7:00 p.m., Dante Lewis and another man confronted Viskovic as he was closing his business for the evening. Lewis was the man Viskovic had seen four nights earlier. While Lewis held Viskovic at gunpoint in a bathroom, the other man, later identified as [Petitioner], plundered the store. The robbers took approximately $20,000 in cash, various receipts and a purple cigarette lighter.
>
> A woman shopping at a nearby grocery store saw Lewis and [Petitioner] enter Cash Plus. She noticed them because one of the men was loitering suspiciously and looked like he was watching out for something. The woman called the police, who arrived as the men were exiting the store. After the officers ordered the men to stop, the men split up and ran. Two officers captured Lewis as he tried to cross University Avenue. They recovered his cellphone.
>
> [Petitioner], who wore a blue hoodie, ran through a nearby laundromat and out the back. After briefly losing sight of

[Petitioner] after he entered the laundromat, two other officers saw him climbing an embankment behind the laundromat. The police followed [Petitioner], who scaled a barbed wire fence into an apartment complex. Shortly thereafter, an apartment resident yelled from his balcony that there was a man hiding on his patio. Officers found [Petitioner] crouched behind a large glass table.

[Petitioner] was carrying $9,548 in cash, a purple cigarette lighter, receipts from the Cash Plus store and a latex glove. Police also found [Petitioner's] van, which was missing license plates, parked two rows away from the Cash Plus store. Inside the van was [Petitioner's] cellphone, empty license plate frames and dealer plates. Police subsequently found incriminating text messages between [Petitioner's] and Lewis's cellphones.

After his arrest, [Petitioner] made—and then skipped out on—bail. Although Viskovic identified Lewis as one of the suspects, he was unable to identify [Petitioner], both on the day of the robbery and at trial, as the other suspect.

At trial, [Petitioner's] defense was that he was not Lewis's accomplice. He testified that he had been panhandling in the area near where he was apprehended in order to earn enough money to buy some drugs and that, while he was urinating near the apartment complex's dumpster, someone he knew ran by and threw a blue jacket on the ground. [Petitioner] further testified that he picked up the jacket and found a wad of money, which he put in his pocket; that he subsequently threw the jacket down and hid because the jacket's owner had previously assaulted him; and that he worried the jacket's owner would be upset if he found [Petitioner] with the jacket.

B. *Attempted Robbery of Check Into Cash Store (2014 Incident)*

On August 12, 2014, managers of a Kentucky Fried Chicken (KFC) in Lemon Grove noticed a white car, which had been on the lot for hours and which had been backed into a parking spot facing the nearby Check Into Cash store. One of the managers saw a man in the driver's seat exit the car, then get right back in. The manager wrote down the car's license plate number.

The following day, the same car was again parked in the KFC lot, but it no longer had license plates. The manager saw the same man from the day before—subsequently identified as [Petitioner]—wearing a construction vest. The manager saw the man pick up orange safety cones from the front of a neighboring restaurant and put them in the car's trunk. The manager called the police. After a patrol car arrived, the white car sped away.

On August 14, 2014, another KFC manager—who had been informed of the white car and its driver's suspicious activity—saw the car again parked in the lot. The manager called police. The manager also saw what appeared to be orange safety cones set up in front of the Check Into Cash store and a man carrying a large black plastic trash bag.

The manager of the Check Into Cash store, Corazon Hernandez, testified that when she arrived to open the store, she noticed the cones and thought they were odd. As she walked to the front door, she saw nearby a man later identified as [Petitioner]. As soon as she opened the door, [Petitioner] grabbed her by the neck and tried to push her inside. Hernandez fought back and screamed. Alerted by the screams, the owner of a neighboring business, David Nguyen, saw [Petitioner] trying to push Hernandez into the store. Nguyen yelled at him to stop. [Petitioner], still carrying the trash bag, ran towards the white car in the parking lot with Nguyen in pursuit.

Another bystander, Marcus Pino, testified he heard the commotion and joined Nguyen in his pursuit of [Petitioner]. As [Petitioner] neared the white car, he turned and pointed a gun at Pino and Nguyen. [Petitioner] got into the car and drove away.

The police ran the car's license plates and discovered it was a rental car. The car was due back to the rental agency on the day of the attempted robbery. Police staked out the rental agency lot. [Petitioner] drove the car near the lot where he met an acquaintance, Princess King. [Petitioner] turned the car over to King, who had rented it, and King returned the car to the rental agency.

After securing the car as evidence, inside detectives found

> a large black plastic trash bag and a pair of pliers. The police also discovered that tamper-proof screws used to affix the license plates had been replaced with regular screws. The detectives removed the license plates and subsequent testing revealed [Petitioner's] thumbprints on the rear plate.
> [Petitioner] was later arrested.
>
> ### C. *Motion for Consolidation*
> Before trial, the People moved to consolidate the charges stemming from the 2013 and 2014 incidents on the ground the evidence established [Petitioner's] identity, intent and modus operandi. The People argued that [Petitioner] could not show a substantial danger of prejudice in joining the cases. [Petitioner] countered that the two incidents were not sufficiently similar to warrant consolidation and that, because the forensic evidence and witness testimony of the 2014 incident was much stronger than the evidence of the 2013 incident, the potential for unfair prejudice was great. After briefing and oral argument, the trial court granted the People's motion.

(Lod. 5, ECF No. 7-18 at 2-6.)

## III. **PROCEDURAL HISTORY**

### A. **State Court Trial and Appeal**

On March, 9 2015, a state jury found Petitioner guilty of robbery, attempted robbery, and two counts of assault. (Lod. 4, ECF No. 7-16 at 7.) Following the conclusion of the trial, the court found, beyond a reasonable doubt, that Petitioner had four prison priors and three strike priors. (Pet. at 38.) The trial court sentenced Petitioner to a determinate term of eight years and a consecutive indeterminate term of fifty years to life. (Lod. 1, ECF No. 7-3 at 117-20.)

Petitioner filed a direct appeal of the conviction in the California Court of Appeal. (*Id*. at 121.) First, Petitioner argued that the trial court "abused its discretion by granting the prosecution's motion to consolidate two cases arising from separate incidents." (Lod. 5 at 2.) Second, Petitioner argued that even if it was within the court's discretion to grant the motion to consolidate, "reversal is required because the joinder resulted in 'gross

unfairness' in violation of his due process rights." (*Id.*) On July 21, 2016, the California Court of Appeal rejected Petitioner's assertions and affirmed the conviction in an unpublished opinion, finding Petitioner did not meet his burden of showing prejudice from the consolidation and the court found that there was no "gross unfairness" to Petitioner as a result. (*Id.* at 12-13.)

On August 17, 2016, Petitioner filed a petition for review with the California Supreme Court. (Lod. 6, ECF No. 7-19.) The petition for review was denied on October 12, 2016, without comment. (Lod. 7, ECF No. 7-20.)

### B. Habeas Petition in State Court

On March 21, 2017, Petitioner filed a *pro se* petition for writ of habeas corpus in the California's Superior Court for the county of San Diego. (Lod. 8, ECF No. 7-21 at 2.) Petitioner stated two grounds for relief: (1) the "trial court imposed an illegal enhancement;" and (2) ineffective assistance of counsel. (*Id.* at 4-6.) On April 6, 2017, the superior court denied the petition, finding that Petitioner failed to state a *prima facie* case for relief. (Lod. 9, ECF No. 7-22.) The Superior Court denied the petition on the merits after determining that the documents used by the prosecution were sufficient to prove Petitioner's identity and that Petitioner stipulated that he was the subject of the priors before the court. (*Id.* at 2.) For these reasons, the court found that trial and appellate counsel were not ineffective for failing to challenge the evidence. (*Id.*)

On April 27, 2017, Petitioner filed a *pro se* petition for writ of habeas corpus in California Court of Appeal, alleging the same grounds for relief as he did in the lower court. (*See* Lod. 10, ECF No. 7-23.) On July 13, 2017, the Court of Appeal denied the petition because both claims were procedurally barred. (Lod. 11, ECF No. 7-24.)

On September 5, 2017, Petitioner filed a *pro se* petition for writ of habeas corpus on the same grounds in the Supreme Court of California. (Lod. 12, ECF No. 7-25.) The petition was subsequently denied on November 15, 2017, without comment. (Lod. 13, ECF No. 7-26.)

On January 8, 2018, Petitioner filed an additional petition in the Supreme Court of

6
18-CV-0212-JLS-WVG

California asserting the same improper joinder claim that he raised on direct appeal. (Lod. 14, ECF No. 7-27.) Petitioner argued the trial court abused its discretion when it consolidated Petitioner's charges in a single trial, resulting in "gross unfairness" to Petitioner. (*Id.*) This petition was similarly denied without comment, on April 11, 2018.[1]

### C. Habeas Petition in Federal Court

On January 29, 2018, Petitioner filed the present Petition. Petitioner alleges the same grounds for relief that he exhausted in state court; (1) that the "trial court imposed an illegal enhancement," and (2) that counsel was ineffective. (Pet.) On April 2, 2018, Respondent filed a Response, contending that Petitioner's claims are both procedurally barred and meritless. (Resp.) On May 17, 2018, Petitioner filed a Traverse. (ECF No. 8.) After reviewing the Petition, the Response, and all of the exhibits provided, the Court found further briefing necessary regarding the timeliness of the Petition. (*See* ECF No. 9.) Petitioner timely filed a response as did Respondent. (See ECF Nos. 10, 12.) Respondent conceded the federal Petition was timely. (ECF No. 12 at 3:3-7.)

## IV. STANDARD OF REVIEW

This Petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") because it was filed after April 24, 1996 and Petitioner is in custody pursuant to the judgment of a state court. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). Under AEDPA, a court may not grant a habeas petition "with respect to any claim that was adjudicated on the merits in State court proceedings," 28 U.S.C. § 2254(d), unless the state court's judgment "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). The Ninth

---

[1] California Courts, Appellate Courts Case Information, http://appellatecases.courtinfo.ca.gov/search/case/disposition.cfm?dist=0&doc_id=2241079&doc_no=S246388&request_token=NiIwLSIkXkg%2FWyBVSCM9WE1IMEw0UDxTJyM%2BSzJRMCAgCg%3D%3D (last visited October 15, 2018).

Circuit has further explained:

> An adjudication is contrary to clearly established Supreme Court precedent if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. It is an unreasonable application of clearly established Supreme Court precedent if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. An unreasonable application of federal law is different from an incorrect application of federal law. The federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. A state court's adjudication is unreasonable only if the federal habeas court concludes that no fairminded jurist could conclude that the adjudication was consistent with established Supreme Court precedent.

*Cain v. Chappell*, 870 F.3d 1003, 1012 (9th Cir. 2017) (quotation omitted).

Where there is no reasoned decision from the highest state court to which the claim was presented, the court "looks through" to the last reasoned state court decision and presumes it provides the basis for the higher court's denial of a claim or claims. *See Ylst v. Nunnemaker*, 501 U.S. 797, 805-06 (1991); *Cannedy v. Adams*, 706 F.3d 1148, 1156 (9th Cir. 2013), *as amended on denial of rehearing*, 733 F.3d 794 (9th Cir. 2013), *cert. denied*, 571 U.S. 1170 (2014). Where "the last reasoned opinion on the claim explicitly imposes a procedural default, [a court] will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits." *Ylst*, 501 U.S. at 803.

A state court need not cite Supreme Court precedent when resolving a habeas corpus claim. *See Early v. Packer*, 537 U.S. 3, 8 (2002). "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent,]" the state court decision will not be "contrary to" clearly established federal law. *Id*.

## V. DISCUSSION

Petitioner's two grounds for relief are as follows: (1) the prosecution failed to adequately prove his identity as to the prior convictions that were used as strikes to enhance

8

his current sentence; and (2) his constitutional right to affective assistance of counsel was violated when his counsel did not object to the evidence used to prove identity for the priors. (Pet. at 5-6.)

Respondent argues that Petitioner is procedurally barred from receiving relief on both claims because the California Court of Appeal denied the habeas petition on adequate and independent state-law grounds, citing *Walker v. Martin*, 562 U.S. 307, 315-16 (2011) and *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). (Resp. at 4.) Respondent further contends that, even if Petitioner's claims were not procedurally barred, they should be denied because they are meritless, asserting that the California Court of Appeal correctly determined that Petitioner's stipulation provided sufficient evidence of identity, citing *Jackson v. Virginia*, 443 U.S. 307 (1979). (Resp. at 5.) Lastly, Respondent argues that Petitioner's counsel was not deficient because "sufficient biographical information linked [Petitioner]" to the prior convictions. (*Id.* at 5.)

### A. Petitioner's Claims are Procedurally Barred

"In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that the failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750 (1991). Here, the California Court of Appeal clearly and expressly denied Petitioner's state petition for habeas corpus relief as procedurally barred because it was untimely.[2] (Lod. 11 at 1.) The state appellate court stated:

> [Petitioner] is not entitled to habeas corpus relief. His petition, filed two years after he was sentenced without any explanation for the delay, is barred as

---

[2] Assuming "the petition were not procedurally barred," the state court of appeal also stated Petitioner's claims had no merit, but emphasized this was not the stated basis for the denial. (Lod. 11 at 2.)

9

18-CV-0212-JLS-WVG

untimely.[3]

(*Id.*)

It is well settled that California's timeliness rule for state habeas petitions constitutes an independent and adequate state procedural ground barring subsequent habeas relief in federal court. *See Walker v. Martin*, 532 U.S. 307, 317 (2011); *see also Ayala v. Chappell*, 829 F.3d 1081, 1095 (9th Cir. 2016) ("*Walker* holds that California's timeliness rule *is* an independent and adequate state law ground sufficient to bar federal habeas relief on untimely claims." (emphasis in original)). Thus, the Petition may proceed only if Petitioner can demonstrate cause for the default and show actual prejudice, or that failure to consider the claims will result in a fundamental miscarriage of justice.

"Cause is the legitimate excuse for default; prejudice is the actual harm resulting from the alleged constitutional violation." *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984); *see also Roybal v. Davis*, 148 F.Supp.3d 958, 989 (S.D. Cal. 2015).

### i. **Petitioner Fails to Demonstrate Cause, Actual Prejudice, or that a Miscarriage of Justice Would Occur**

Petitioner claims the delay was caused by his counsel refusing to bring the claim, despite him taking "every avenue" to convince counsel to raise his claims.[4] (Traverse at 8-4:1-6.) Attorney error can be cause only if an attorney's performance is "constitutionally

---

[3] In California, a petitioner must "explain and justify any significant delay in seeking habeas corpus relief." *In re Reno*, 283 P.3d 1181, 1207 (Cal. 2012). "Delay in seeking habeas corpus or other collateral relief has been measured from the time a petitioner becomes aware of the grounds on which he seeks relief" and that "time may be as early as the date of conviction." *In re Clark*, 855 P.2d 729, 765 n.5 (Cal. 1993).

[4] Petitioner seems to indicate he is referring to his state court petition. However, Petitioner refers to his counsel as appellate counsel. The Court assumes Petitioner is referring to counsel in regards to his state habeas petition. In any event, whether it was counsel for a direct appeal or his state habeas petition is inconsequential as the outcome is the same either way. The Supreme Court has explicitly stated that an attorney's inadvertence in failing to raise certain claims in a state appeal does not constitute cause. *See Murray v. Carrier*, 477 U.S. 478, 486-87 (1986).

ineffective under the standard established in *Strickland v. Washington*[.]"[5] *Coleman*, 501 U.S. at 752 (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). However, "[t]here is no constitutional right to an attorney in state post-conviction proceedings." *Id*. (citation omitted). Thus, an attorney "error that led to the late filing of [a] state habeas" petition "cannot be constitutionally ineffective" and Petitioner "must bear the risk of attorney error that results in a procedural default." *Id*. at 752-53 (internal quotation omitted). Consequently, any argument that Petitioner's counsel erred by not timely raising a habeas petition before the state court is unavailing as cause.

Although Petitioner has already failed to show the requisite cause, the Court notes that Petitioner offers no argument regarding prejudice. Regarding any miscarriage of justice, in conclusory fashion, Petitioner simply states it would be a miscarriage of justice to deny the Petition because there is "clear and convincing" evidence in support of his underlying claims. (Traverse at 5:7-13.) Such a superficial statement is insufficient.

Accordingly, the Court finds Petitioner failed to meet his burden and federal habeas review of the claims is barred.

## VI. **CONCLUSION**

For the aforementioned reasons, the Court **RECOMMENDS** Petitioner's Petition for Writ of Habeas Corpus be **DENIED**. This Report and Recommendation is submitted to U.S. District Judge Janis L. Sammartino, pursuant to the provision of 28 U.S.C. Section 636(b)(1).

**IT IS ORDERED** that no later than **December 21, 2018** any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to objections shall be filed with the

---

[5] The Court makes no determination as to whether there was attorney error by not timely filing a state habeas petition on behalf of Petitioner. The Court merely assumes error for sake of argument.

Court and served on all parties no later than **December 28, 2018**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal. *Martinez v. Ylst*, 951 F2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated: November 14, 2018

_____
Hon. William V. Gallo
United States Magistrate Judge